**BLUMCRAFT OF PITTSBURGH, a Partnership Consisting of Hyman Blum, Max Blum, Louis Blum and Harry P. Blum**

v.

**KAWNEER CO., Inc., et al.**

Civ. A. No. 12847.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 16, 1971.

Reconsideration Denied
March 27, 1972.

Cotton, Katz & White, Atlanta, Ga., James C. McConnon, Philadelphia, Pa., for plaintiff.

Haas, Holland, Levison & Gibert, Atlanta, Ga., for defendant.

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

By order dated June 15, 1971, this court decided, in light of the United States Supreme Court's decision in Blon-der-Tongue Laboratories, Inc. v. University of Illinois Foundation et al., 402 U. S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), to reconsider the defendant's motion for summary judgment, since the order dated June 2, 1970, 318 F.Supp. 1399, denying summary judgment relied primarily on Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), which was overruled in part by *Blonder-Tongue, supra*. The plaintiff, Blumcraft of Pittsburgh, filed a brief and affidavits in opposition to the defendants' motion for summary judgment, and the defendants, Kawneer Co. and A. R. Winter Co., Inc., have filed a reply brief to the plaintiff's brief.

This is a patent infringement suit dealing with the alleged infringement of a design patent, United States Patent No. D–171,963. This patent, which relates to a railing styled for use in contemporary architecture, has been involved in two other civil actions. In the first suit, the Court of Claims held the patent to be valid. Blumcraft of Pittsburgh v. United States, 372 F.2d 1014, 178 Ct.Cl. 798 (1967). In the second suit, the patent was held valid by the United States District Court for the District of South Carolina, Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina et al., 286 F.Supp. 448 (D.S.C.1968), but the Court of Appeals for the Fourth Circuit held the patent to be invalid (407 F.2d 557, 4th Cir. 1969). Thereafter, the plaintiff petitioned for writ of certiorari to the Supreme Court of the United States because of the conflict between the holding of the Fourth Circuit and the holding of the Court of Claims. The Supreme Court denied certiorari, 395 U.S. 961, 89 S.Ct. 2103, 23 L.Ed.2d 747.

The defendants claim that there is no genuine issue of fact for decision, since the patent on which the plaintiff relies has been held invalid by the Court of Appeals for the Fourth Circuit. See, Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina et al, *supra*. In substance, the defendants urge that the plaintiff is es-

**1020**

topped as a matter of law from relitigating the validity of the patent by reason of the doctrine of collateral estoppel.

The plaintiff insists that the summary judgment motion should not be granted because: (1) the issues in this case and the Fourth Circuit case are not identical; (2) the Court of Appeals for the Fourth Circuit did not grasp the technical subject matter of the issues involved; (3) the Fourth Circuit committed reversible error in not giving sufficient credence to the findings of the trial court; and (4) it would be unjust and inequitable to apply the doctrine of estoppel, since the patent was first held valid by the Court of Claims.

■ The plaintiff's first contention is wholly without merit. The only ruling by the Fourth Circuit with respect to the patent in question was that the patent was invalid on the ground of obviousness in view of prior art. The court never decided the separate issue of infringement. Therefore, the plaintiff's assertion that the infringing railing here is different from the infringing railing considered by the Fourth Circuit is irrelevant and does not support the plaintiff's contention that the issues are different. Accordingly, the identical issue to that considered by the Fourth Circuit, namely, the validity or invalidity of the patent in light of the prior art, is an issue presented in the present suit.

■ The second contention of the plaintiff is also without merit. The Supreme Court in *Blonder-Tongue* did recognize that there are rare instances where a court may fail to grasp the technical subject matter involved in the case. However, there is no technical subject matter which the Court of Appeals for the Fourth Circuit might have failed to grasp in relation to the patent in question. This is especially true in light of the rule that patentability in design cases depends on whether or not the design is obvious in overall appearance when viewed through the eyes of the ordinary observer. Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co., 444 F.2d 295 (9th Cir. 1970).

■ The plaintiff's third allegation, that the Fourth Circuit committed reversible error by ignoring the findings of fact of the lower court, is not an issue to be properly raised in this court. The Supreme Court in *Blonder-Tongue* required that the patentee-plaintiff be permitted to demonstrate that he did not have a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time. This mandate of the Supreme Court does not extend so far as to give this court authority to sit as an appellate court to determine if the Court of Appeals for the Fourth Circuit committed reversible error because it allegedly ignored certain findings of fact made by the lower court.

The plaintiff's final allegation, that it would be unjust and inequitable to estop the plaintiff from attempting to establish the validity of the patent in this court, since the Court of Claims previously held the patent to be valid, presents a perplexing issue.

The Supreme Court in *Blonder-Tongue* stated that "Triplett should be overruled to the extent it forecloses a plea of estoppel by one facing a charge of infringement of a patent that has *once* been declared invalid." (emphasis added). A dilemma arises when trying to apply this estoppel doctrine to the present case and still comply with another mandate of *Blonder-Tongue,* that the trial court "must decide in a principled way whether or not it is just and equitable to allow the plea of estoppel in the case before it."

■ To blindly adhere to the plain language of *Blonder-Tongue* and automatically apply an estoppel when the patent has once been held invalid, would be unjust and inequitable. Such a strict application of the estoppel doctrine would bar a patent, which has been sustained numerous times, from any further litigation, simply because it was finally declared invalid.

On the other hand, it would seem unreasonable to think that the Supreme Court, in *Blonder-Tongue,* intended to limit the application of estoppel only to

situations where the patent was declared invalid the first time it was litigated. Such a narrow application would pretermit the policy reasoning behind the estoppel doctrine. The Supreme Court, in *Blonder-Tongue*, elaborated that estoppel should help reduce needless multiple litigation. If the Supreme Court intended for estoppel to apply only after the patent is held invalid the first time it is involved in litigation, then the road is clear for the patentee-plaintiff, who was successful in his first suit, to bring infringement suits in the future solely to shackle various defendants, often times small businessmen, with the substantial legal fees incurred in patent suits. Logic dictates that such a patentee, whose patent has been held valid only once and held invalid numerous times thereafter, should be estopped from bringing additional suits.

Clearly, the *Blonder-Tongue* decision has left the courts with the task of balancing the equities on a case by case basis. Fortunately, this court does not have to draw the line as to how many prior judgments of validity are required before it would be unjust and inequitable to allow a single judgment of invalidity to estop the patentee from future litigation. Nor does this court have to determine how many judgments of invalidity subsequent to a single judgment of validity are needed before it would be equitable to estop the patentee from further litigation. This court need only look at the situation before it.

■ In the present case the patent has been litigated twice before coming to this court. In the first case, before the United States Court of Claims the patent was held valid and infringed. In the second case, the patent was held valid and infringed by the United States District Court for the District of South Carolina and this decision of validity was reversed by the United States Court of Appeals for the Fourth Circuit. Accordingly, the question before this court is whether it would be just and equitable to apply an estoppel in favor of the defendant in this patent infringement suit involving a patent which has been judged valid by the Court of Claims and invalid by a Court of Appeals. The court finds that, in the interest of justice, estoppel should not be applied here.

As was stated in *Blonder-Tongue,* "no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision necessarily rests on the trial courts' sense of justice and equity." At present, there are two conflicting decisions construing the validity of the patent in question. In the interest of justice, this court cannot place more weight on the decision of the Court of Appeals than on the decision of the Court of Claims in ruling on the defendants' plea for estoppel. Furthermore, this court cannot rule on the validity of the patent, since that issue is not properly before the court at this time.

Accordingly, for reasons hereinbefore stated, the defendant's motion for summary judgment is hereby denied.

### On Motion for Reconsideration

The defendants, Kawneer Co., Inc., Bremen Steel Co., Inc. and A. R. Winter Co., Inc., have presently filed a motion asking this court to reconsider its November 16, 1971, order in which the defendants' motion for summary judgment was denied holding that the doctrine of collateral estoppel as set out in the recent case of Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), does not support summary judgment treatment in the case at bar. In the main, their motion rests upon two principal arguments. First of all, they submit that an analysis of the opinion of the United States Supreme Court in *Blonder-Tongue* and the decision of the District Court for the Northern District of Illinois on remand [1] shows that the defendants' plea of collat-

---

1. University of Illinois Foundation v. Blonder-Tongue Laboratories, Inc., 334 F.Supp. 47 (N. D.Ill.1971).

eral estoppel should be sustained. Secondly, the defendants contend that the Court of Claims case cannot be given equal weight to the decision rendered by the Fourth Circuit Court of Appeals.

In relation to the first argument, the defendants submit that the only element left for this court to consider in determining whether or not the estoppel doctrine should apply is whether the patentee "had a full and fair chance to litigate the validity of his patent in an earlier case. . . ." 402 U.S. at 333, and that such inquiry in the instant case is limited solely to consideration of the decision of the Court of Appeals for the Fourth Circuit in Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina et al., 407 F.2d 557 (4th Cir. 1969).

By footnote, the defendants go on to submit that this court mistakenly construed the statement in *Blonder-Tongue* that. "In the end, decision will necessarily rest on the trial courts' sense of justice and equity", 402 U.S. at 334, 91 S. Ct. at 1445, as imposing a duty upon the District Courts to consider without limitation any and all equitable factors which might be raised in each case. The defendants contend that the Supreme Court intended the statement to apply only to the discretion to be exercised by the trial courts in determining whether the patentee had a full and fair chance to litigate the validity of the patent in the case in which he lost.

■ This court does not agree with such an analysis of *Blonder-Tongue*. After re-examining the *Blonder-Tongue* decision, with particular attention to its factual background, this court is unable to conclude that the Supreme Court intended to limit inquiry on a plea of estoppel to a determination of whether the litigation which held the patent to be invalid was fair, without any consideration being given to the first litigation before the Court of Claims in which the patent was declared valid. Throughout the *Blonder-Tongue* decision, it appears that the Supreme Court is addressing itself only to the issue of a "first" deci-

sion of invalidity and a "second" action on the patent already held invalid. (402 U.S. at 328, 329, 333, 91 S.Ct. 1434). The Supreme Court was considering the situation where the patent had previously been held invalid the first time it was tried. The present case, which deals with a patent first held valid by the Court of Claims and then held invalid by the Fourth Circuit in separate litigation, presents a different set of facts from those considered by the Supreme Court in *Blonder-Tongue*.

■ In the November 16, 1971 order, this court concluded that in the interest of justice it could not place more weight on the decision of the Court of Appeals than on the decision of the Court of Claims in ruling on the defendants' plea for estoppel. The defendants' second argument on their motion for reconsideration takes issue with this conclusion of the court. The defendants submit that this conclusion fails to recognize the importance of the special circumstances under which the Court of Claims decision was rendered. They allege that, first of all, the United States as the defendant in the Court of Claims suit by agreement bargained away its rights under Rules 58–59 of the Court of Claims to take any exceptions to the findings and conclusions of the trial commissioner, and its right to argue the case before the Court of Claims. Secondly, the defendants submit that the Court of Claims did not have before it three important prior art references that were heavily relied upon by the Court of Appeals for the Fourth Circuit.

The plaintiff, in its brief in opposition to the defendants' motion for reconsideration, contends that the stipulation entered into between Blumcraft and the United States related solely to the procedure to be followed in the accounting and in no way limited the government's right to appeal from Court of Claims decision.

Furthermore, the plaintiff argues that the defendants' contention that the Fourth Circuit's decision of invalidity was based upon three prior art refer-

ences not available to the Court of Claims is false. The plaintiff submits that all of the prior art in the Fourth Circuit case was brought to the attention of the trial commissioner in the Court of Claims.

On the issue of the three prior art references, the defendants contend that (1) the Hollaender stair rail of 1949, (2) a railing in a sanatorium built in the mid-1930's, and (3) photographs of a W. T. Grant store published in 1940 were considered very important by the Fourth Circuit in holding the patent invalid; and that these prior art references were not presented in the Court of Claims litigation.

While it appears that these exact prior art references were not before the Court of Claims, and were referred to in the Fourth Circuit opinion (407 F.2d at 559), this court must still find that the defendants' claim that the Fourth Circuit decision of invalidity of the patent was based upon these three prior art references which were unavailable to the Court of Claims is unfounded. Each of these three references, although not mentioned in the Court of Claims opinion, was paired by the Fourth Circuit in its opinion (407 F.2d at 559) with a parallel reference showing the same subject matter,[2] and each of the parallel references was, as agreed by both parties in their briefs, referred to by the Court of Claims in holding the patent valid.

Accordingly, as revealed by the Fourth Circuit's own opinion, it did not in any meaningful sense place emphasis on prior art that was not available to the Court of Claims, rather it based its decision on prior art of identical subject matter and simply disagreed with the ultimate conclusion reached by the Court of Claims.

In dealing with the effect of the alleged stipulation entered into between the parties in the Court of Claims case, this court is of the opinion that the *Blonder-Tongue* decision does not dictate an investigation by this court into such a factor of a prior holding of validity. The mandate of *Blonder-Tongue* was that the defendant in the second litigation could plead estoppel when the patent had been declared invalid in the first litigation. To protect the plaintiff from an automatic application of the estoppel doctrine in the second litigation, the Supreme Court went on to say that the plaintiff could defeat the estoppel plea if he could demonstrate that he did not have "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time". (402 U.S. at 333, 91 S.Ct. at 1445).

2. A chart explaining the three prior art references referred to by defendant Kawneer and the three parallel references would appear as follows:

| Prior Art Discussed by the Fourth Circuit but not before the Court of Claims | References in Evidence Both the Fourth Circuit and Court of Claims Cases (Court of Claims Exhibit No.) |
| --- | --- |
| Hollaender | Wallach's Jamaica Store (Defendant's Exhibit No. 6) |
| W. T. Grant | Kansas City Auditorium (Defendant's Exhibit No. 1) |
| Sanatorium | Saarinen Church (Defendant's Exhibit No. 3) |

In referring to all of these references the Fourth Circuit spoke as follows:

Multiple parallel rails offset from their supporting posts were known to the prior art. Two examples are *Hollaender's stair rail*, 1949 and *Wallach's Jamaica store*, 1950. . . . In a church built in the early 1940's Eliel and Eero *Saarinen* achieved a floating effect. . . . A similar illusion was obtained in a *sanitorium* built in the mid-1930's. Photographs of the *Kansas City Auditorium* . . . and of a *W. T. Grant Store*, published in 1940, disclose relatively flat, single handrails. . . . (emphasis added).

407 F.2d at 559.

Therefore, in light of such a mandate of *Blonder-Tongue*, this court need look into procedural and substantive factors of an earlier case only when the patent in the case before it was declared invalid in the first litigation and then in the second litigation before this court, the plaintiff asserts that the first suit was defective procedurally, substantively or evidentially. If the court's inquiry into prior suits were not so limited, this court could envision having to examine in detail several prior cases if ever a situation arose where the first several suits involving a particular patent resulted in holdings of validity and a following suit declared the same patent invalid. In such a situation, arguments similar to that raised here by Kawneer, which ask the court to examine several collateral factors give rise to a meaningful basis on which to rest more weight on the subsequent holding of invalidity, would result in an expenditure of judicial time and at. best result in a mere second guess of the prior decisions.

Accordingly, this court disagrees with the defendants that the Fourth Circuit opinion should be given more weight than the Court of Claims case.

By an additional brief filed on January 27, 1972, the defendants further urge that this court vacate its November 16, 1971 order and grant summary judgment in light of the January 7, 1972 decision entered by the United States District Court for the District of Kansas in the case of Blumcraft of Pittsburgh v. Architectural Art Mfg., Inc., 337 F. Supp. 853.

The decision of the Kansas court that the *Blonder-Tongue* estoppel doctrine is clearly applicable in the *Blumcraft* case was largely influenced by the interpretation given to *Blonder-Tongue* by the Court of Appeals for the Tenth Circuit in Boutell v. Volk, 449 F.2d 673 (10th Cir.). In rejecting Blumcraft's contention that the Court of Claims decision should be given equal weight with the Fourth Circuit decision in determining whether collateral estoppel should apply, the Kansas Court stated that *"Blonder-Tongue*, as expounded by its own author and other judicial commentators on its efficacy, including Judge Doyle in Boutell v. Volk, and Judge Hoffman in applying *Blonder-Tongue* on remand, applies only to judgments of invalidity—not to judgments of validity." (Kansas Order at p. 8).

This court cannot agree with the Kansas Court's interpretation of the Boutell v. Volk decision. The question before the court in *Boutell* was significantly different from that before the Kansas court and this court in the respective Blumcraft cases. In its November 16, 1971 order this court considered the prior judgment of the Court of Claims, which held the Blumcraft patent valid, only as an equitable consideration in determining whether or not to grant the defendants' motion for summary judgment based on collateral estoppel. Apparently, this was the same reason the patentee, Blumcraft, proffered it for consideration by the Kansas Court. In *Boutell* the *patentee* was attempting to use a prior decision of *validity* to estop a different defendant in a later case. In essence, the patentee in *Boutell* was alleging that the estoppel doctrine established in *Blonder-Tongue* should be given symmetrical application so as to enable the patentee to plead estoppel against a future defendant. Such an interpretation of the *Blonder-Tongue* decision was properly rejected by the court in Boutell v. Volk. However, this is quite different from the Blumcraft situation. By the November 16, 1971 order this court did not use the Court of Claims decision to estop anybody or to bind a non-party defendant. This court considered the Court of Claims decision of validity only as an equitable consideration in determining whether to apply estoppel *against* the patentee, Blumcraft, under the *Blonder-Tongue* decision. This court finds nothing in the Boutell v. Volk case which conflicts with this court's order of November 16, 1971.

Accordingly, for reasons stated herein, the defendants' motion for reconsideration is hereby denied and the prior order of this court entered November 16, 1971 remains in effect.